659 So.2d 1130 (1995)
George HAAS, M.D.; George Haas, M.D., P.A.; Andrew F. Greene, M.D.; and Andrew F. Greene, M.D., P.A., Appellants,
v.
Kathleen ZACCARIA, as Mother and Guardian of Michael Zaccaria, a minor; and Kathleen Zaccaria, individually, Appellees.
Nos. 93-1510, 93-1603, 93-1664 and 93-2267.
District Court of Appeal of Florida, Fourth District.
August 2, 1995.
Rehearing Denied September 22, 1995.
*1131 Janis Brustares Keyser and Hayward D. Gay of Gay, Ramsey & Lewis, P.A., West Palm Beach, for appellants/cross-appellees-George Haas, M.D., and George Haas, M.D., P.A.
Eugene L. Ciotoli and Richard B. Schwamm of Bobo, Spicer, Ciotoli, Fulford, Bocchino, DeBevoise & Le Clainche, P.A., West Palm Beach, for appellants-Andrew F. Green, M.D. and Andrew F. Green, M.D., P.A.
Joel D. Eaton and Barry L. Meadow of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellees/cross-appellants.
Jack W. Shaw, Jr., of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, P.A., Jacksonville, for Florida Defense Lawyers Ass'n, amicus curiae.
FARMER, Judge.
We have before us two appeals by the defendants in a medical malpractice action from the final judgment and two appeals from the later cost judgment. Because the trial court improperly limited the defenses of the two doctors and excluded admissible evidence, we are compelled to reverse the judgments and require a new trial.
The patient, a child, underwent a distal femoral osteotomy to correct a curvature resulting from a previous accidental injury to his right leg. Dr. Greene did the surgery, and Dr. Haas assisted. Both doctors are orthopedic surgeons. During the surgery, Dr. Greene operated an oscillating saw to cut through the bone. While he was operating the saw, the popliteal artery and vein were both severed. Dr. Greene immediately called for the assistance of one Dr. Wengler, a vascular surgeon. Dr. Wengler sewed the two ends of the artery together, but ligated the vein because its ends were shredded. Hearing a pulse in the lower leg with a Doppler listening device, Dr. Wengler departed.
When the remainder of the planned surgery was nearly over, Dr. Wengler was called back because Drs. Greene and Haas could no longer hear a pulse. An arteriogram showed an occlusion below the repair; a new incision was made and clots removed. After closure, fluoroscopic pictures showed good blood flow through to the foot. Later the leg discolored, and Dr. Wengler did another surgery with Dr. Greene assisting. They found the arteries had "spasmed down," thus restricting blood flow, and more clots were removed. After administering xylocaine, they closed the new incision. At this point they had pulses.
When still later no pulse was found, Dr. Wengler was again called back. Drs. Wengler, Greene and a third surgeon were then in surgery throughout the night to cure the problem. They tried a number of procedures. In all attempts they were unsuccessful in maintaining blood flow through the severed artery. Ultimately the patient was transferred to a specialist at the University of Miami, but all efforts failed to save the leg. The child finally suffered an amputation above the knee.
*1132 Plaintiff sued only Drs. Greene and Haas. Each denied his own negligence and sought to assert alternatively that the other alone was negligent, that no one was negligent, or that a non-party was responsible wholly or partially for the loss of the leg. The court struck the defense that Dr. Wengler was responsible for the injury, holding that he was a subsequent treating doctor.
In pretrial depositions each of the defendants testified to a different version of events and blamed someone else or something other than his own negligence. Dr. Haas testified at a deposition that Dr. Greene placed the retractors initially and that he held them exactly where Dr. Greene had placed them. Dr. Greene testified at a deposition that he did initially place the retractors but that Dr. Haas was engaged in conversation during the cutting and was distracted from what he was doing; he contended that Dr. Haas should have prevented the saw blade from slipping through the retractors. Each denied his own negligence.
Four defense orthopedic experts testified in pretrial depositions that Dr. Greene or Dr. Haas (depending on who had retained the expert testifying) was not negligent but admitted that although it is possible for the popliteal artery and vein to be cut during this surgery without negligence, it is not probable unless someone has been negligent. One of the defense experts testified that both were not negligent.
Just before trial, plaintiff moved for a partial summary judgment on liability accompanied by deposition testimony from experts that the popliteal artery and vein would not "within a reasonable degree of medical probability" be severed during this surgery in the absence of negligence. The motion also contended that defense experts had testified that, although it is possible to sever the vessels without negligence, it is not probable that they would be severed without some negligence.
The trial judge denied summary judgment. He also ruled, however, that defendants would not be permitted at trial to offer evidence that the injury could have resulted without any negligence by either defendant. Similarly he excluded evidence as to whether it was possible for the injury to occur without negligence. Finally on the subject, the judge precluded the defendants from showing that someone else besides themselves was negligent and from adducing any testimony from experts in vascular surgery and the applicable standard of such care. Thus, the judge refused to allow the jury to consider Dr. Wengler in apportioning fault.
The case proceeded to trial. At the close of the evidence the court refused to instruct the jury on section 766.102(4) Florida Statutes (1993). The jury returned a verdict finding Dr. Greene 70% responsible and Dr. Haas 30% responsible and awarded substantial damages to the child and his mother. The judge later denied post trial motions for a new trial or remittitur.
Section 766.102(1), Florida Statutes (1993), places on the claimant in a medical malpractice action the burden of "proving by the greater weight of the evidence that the alleged actions of the [physician] represented a breach of the prevailing professional standard of care for that [physician]." In addition, subsection (3) of the statute provides that, in order to prove a breach of the applicable standard of care, the claimant must show "that the injury was not within the necessary or reasonably foreseeable results of the surgical * * * procedure" in question. Finally, subsection (4) of the statute declares that "[t]he existence of a medical injury shall not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving" an injury resulting from a breach of the standard of care. With these statutory requirements in mind, we turn to the matters at hand.
Defendants asserted  or attempted to assert  all of the defenses logically possible from the facts of plaintiff's claim: (a) "I was not negligent"; (b) "neither one of us was negligent;" and (c) "someone else was negligent." The effect of the trial judge's ruling was to limit the trial to only defense (a). Defendants were expressly foreclosed from defending to the jury on the basis that jointly they were not negligent and that the patient's medical injury resulted from the *1133 negligence of a third party. This was not only unfair, but it was also not required by anything contained in section 766.102. We believe that the judge in so doing confused the ultimate burden of proof on the plaintiff in a medical malpractice action with the entirely separate subject of the physicians' defenses and the evidence allowable to sustain these defenses.
As we have just seen, subsection (3) of section 766.102 explicitly provides that the claimant must show that the injury resulted from a departure from the applicable standard of care and that it was not within the expected or foreseeable results of the procedure. The trial judge refused to permit defense experts to testify that the standard of care was such that severance of the popliteal artery and vein was a reasonably foreseeable result of a femoral distal osteotomy, which could occur even if both doctors complied with the standard of care. A necessary correlative of subsection (3) is obviously that the physician is allowed to offer evidence to the effect that the result was necessarily and reasonably foreseeable. In excluding defendants' evidence in this case, the trial judge accepted the argument of plaintiff that the evidence was not admissible because it is couched in terms of the "possible" rather than the time-honored locution "reasonable medical probability."
We note that section 766.102 does not use the formulation "reasonable degree of medical probability."[1] Rather it requires the claimant to prove "by the greater weight of the evidence that the alleged actions of the [physician] represented a breach of the prevailing professional standard of care for that [physician]." Hence, even assuming that "reasonable medical probability" is part of a claimant's burden of proving a claim of medical negligence, we do not agree that such a burden logically compels the conclusion that the defendant doctor is precluded from offering evidence of possible explanations other than his own individual or joint negligence.
Probabilities are provoked by possibilities. Indeed, the universe of probabilities on any subject exists as a subset of the universe of possibilities. In a logical sense, the probabilities may be deduced only from an analysis of all the possibilities. The famous dictum of Mr. Sherlock Holmes  or, more accurately, Sir Arthur Conan Doyle  aptly illustrates the point: when one has gathered all the possibilities, excluded all the impossibilities, that which remains, no matter how improbable, must yield the truth. So it is here.
Moreover, even assuming that no testimony of an appropriate defense expert witness opined that the vessels could have been severed even if all attending doctors complied with the standard of care, surely the defendants' own individual denials of personal negligence would have permitted the jury to find that neither was negligent. The jury would have been free to reject the testimony of plaintiff's expert witnesses and accept only the denials of the defendants to return a verdict of not guilty for both defendants. There was simply no basis in law for the judge to forbid the defendants from adducing other evidence or arguing to the jury that jointly there was no negligence.
Equally, defendants should have been allowed to plead the negligence of the attending vascular surgeons and attempt to prove it by calling vascular experts to show the absence of their own negligence and that Dr. Wengler was responsible for the loss of the leg. In this regard, we entirely agree with the following holding of the third district in Barrios v. Darrach, 629 So.2d 211 (Fla. 3d DCA 1993), rev. denied, 637 So.2d 234 (Fla. 1994), which we find disposes of plaintiff's argument on the issue:
"When a plaintiff has been treated by successive physicians and at some point during the course of treatment has sustained a single injury, absent the proof that the negligence, if any, of the initial tortfeasor was the proximate cause of the injury as a matter of law, the jury should be presented all relevant information concerning the *1134 plaintiff's care and treatment so that it can appropriately determine how the injury occurred. In the instant case, with the timely presentation of all the evidence, a jury could have concluded, as Barrios argues, that it was Dr. Pritchard's actions which caused the injury or, alternatively, that the acts claimed to have been committed were not `demonstrably separable in time and effect,' Leesburg Hosp. Ass'n v. Carter, 321 So.2d 433, 434 (Fla. 2d DCA 1975), both doctors being jointly responsible for the injury. * * * [T]he case sub judice can be described as a single injury of disputed causation. Thus, as in Farina v. Zann, 609 So.2d 629 (Fla. 4th DCA 1992), while Darrach was entitled to an instruction on the law set out in [Stuart v.] Hertz, [351 So.2d 703 (Fla. 1977)], the Hertz principle should not have been used to exclude the argument and evidence Dr. Barrios sought to admit."
629 So.2d at 213. As in Barrios, we cannot agree that the departure from the applicable standard of care of Drs. Greene and Haas was so clearly established in pretrial proceedings that their liability could have been deemed established as a matter of law. It was for the jury to decide whether either or both of them, or any other person, was negligent.
We also conclude that Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), requires that, for a proper apportionment of fault, Dr. Wengler's name must be placed on the verdict form.
REVERSED FOR NEW TRIAL ON ALL ISSUES.
GUNTHER, C.J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Compare § 627.727(2), Fla. Stat. (1993) (claimant in tort action for damages for pain and suffering from permanent injury from use of motor vehicle entitled to recover damages only if injury is "within reasonable degree of medical probability"). It is obvious that when the legislature intends to require that an injury be established "within a reasonable degree of medical probability," it knows how to form those words.