On Rehearing Denied

Before COPE, C.J., and LEVY and SUAREZ *, JJ.
PER CURIAM.
Dupont has moved for rehearing, contending that we misunderstood theories of defense and applied incorrect legal standards. We deny rehearing, but clarify our reasons for reversing the judgment.
The Sidrans used Benlate DF from 1988 through February 1991. As explained in the initial opinion, the plants’ health declined during this period of time.
In May 1991, the Sidrans received a notice from Dupont indicating that Benlate DF had been recalled. The recall notice stated, in part:
The recall was initiated because trace levels of atrazine herbicide were found, by routine analysis, in some production batches. Through our investigations of reports of plant damage, we detected effects that we do not fully understand. From the plant symptoms we have seen and our extensive analytical investigations, we believe the cause must be a herbicide at extremely low levels.
The plants generally show reduced vigor or stunted growth. If the herbicide was present at higher levels, it would be *1044 easily detectable and the plants would show more severe symptoms.
The symptoms suffered by the Sidrans’ orchids corresponded to those outlined in the Dupont recall notice.
Dupont set up a claims process. The Sidrans’ claim was not resolved. The Si-drans brought suit, alleging that Benlate DF was a defective product and Dupont was negligent. The Sidrans contended that Benlate had caused the loss of their orchids.
Dupont denied that there was any product defect and denied that it had been negligent. Dupont also offered evidence that the actual cause of the damage to the Sidrans’ orchids lay elsewhere. Specifically, Dupont introduced evidence which it claimed would demonstrate that the orchid damage was caused by (a) groundwater contamination in the Suniland area, or (b) the Sidrans’ misuse of another fungicide, Kocide, or (c) both. Dupont is, of course, allowed to defend in this way, denying any negligence or product defect and asserting that the actual cause of the damage to the orchids was the fault of something else— groundwater contamination or misuse of a different product. See Haas v. Zaccaria, 659 So.2d 1130, 1132 (Fla. 4th DCA 1995); Carnival Cruise Lines, Inc. v. Levalley, 786 So.2d 18, 19 (Fla. 3d DCA 2001).
Regarding the issue of groundwater contamination, Dupont offered evidence at trial that the groundwater in the Suniland area had been contaminated by improper disposal of dry cleaning materials from a dry cleaning establishment. The chemicals had seeped into the groundwater and traveled in a plume of contamination moving from upstream to downstream in the flow of subterranean groundwater. According to the testimony it was reasonable to assume that when contamination was detected in the wells of the neighbors across the street, the Knapps, a comparable level of contamination likely also existed in the Sidrans’ wells.
The Knapps’ wells tested negative for contamination on February 5, 1991. The Sidrans’ three wells were negative on September 20, 1991. Five weeks later, on October 28, 1991, the Knapps had a positive test of 8.0 parts per billion of percho-loroethylene. A few days later, on November 5,1991, there was a positive test of 1.7 parts per billion[1] in two of the Sidrans’ three wells. Soon thereafter, on November 25, 1991, and January 29, 1992, the Sidrans’ wells tested negative for contamination.
Based on this testimony and the testimony of the experts cited in our original opinion, Dupont maintained that the level of contamination rose and fell so that the orchids were watered with contaminated water during times relevant here.
The obvious question, however, was whether the chemicals involved here would have an adverse effect on orchids at the observed level of 1.7 parts per billion on the Sidrans’ property or the higher level of 8.0 parts per billion detected on the Knapps’ property.
At trial, Dupont offered the testimony of Dr. Harold Coble, an agronomist employed by the United States Department of Agriculture. Dr. Coble was accepted as an expert and introduced as such to the jury. Dr. Coble had performed Benlate testing for Dupont. As stated earlier, Dupont’s recall notice indicated Dupont’s belief that the problems associated with Benlate DF *1045 were attributable to contamination of Ben-late DF with atrazine. Dr. Coble performed tests on orchids to determine if atrazine could damage orchids, and if so, at what levels. Dr. Coble found no damage to orchids, even at three times the highest level of atrazine found in a Benlate box.[2]
While Dr. Coble was on the stand, Du-pont sought to ask Dr. Coble about the effect on orchids if they were irrigated with water contaminated with organic solvents. The Sidrans timely objected because Dr. Coble had performed no studies, and was aware of none, which would establish that water contamination at the observed levels would cause damage to orchids. The objection was overruled, and Dupont asked:
Q ... Doctor Coble, do you have an opinion, within a reasonable degree of scientific certainty, as to whether repeated applications of water contaminated with organic solvents would damage orchid plants?
A. Yes.
Q. What is that opinion, sir?
A. If water contaminated with organic solvents were repeatedly used to water plants, that certainly would have an [ejffect on the plant cuticle that we talked about yesterday. Obviously the higher the level—
[Plaintiffs Counsel]: Your Honor, let me object to anything further. That is not responsive to the specific question.
The Court: Overruled, go ahead.
The Witness: Obviously the higher the level [of] the contaminant, the more likely the damage would occur.
TR. 3275 (emphasis added).
This testimony clearly told the jury that the water contamination in Suniland was of sufficient magnitude to cause injury to the orchids. However, Dr. Coble had conducted no studies showing this to be the case at any of the observed levels. Dupont never introduced any such studies in the proceedings below.
Dupont’s failure in this regard stands in marked contrast to Dupont’s careful preparation of scientific testing regarding atra-zine contamination in Benlate. As relates to atrazine, Dupont and Dr. Coble made the point that the mere presence of atra-zine contamination was not enough to cause plant damage. Dr. Coble testified that (based on testing he conducted) the level of atrazine found in Benlate was not high enough to cause the observed harm to plants.
Exactly the same question applies when considering whether the observed level of water contamination could create the injury sustained by the Sidrans’ orchids. Since there was no proper scientific basis for Dr. Coble’s testimony on this point, it should have been excluded.[3]
Dupont argues that this error was harmless. We cannot accept that contention. The Sidrans objected not only to Dr. Coble’s testimony but also moved to strike the entire water contamination defense. *1046 Dr. Coble was introduced to the jury not only as an expert, but as an agronomist from the United States Department of Agriculture, which carries with it a particular aura of credibility. The cited testimony was the main support for Dupont’s water contamination defense, but there simply was no scientific basis for it. Clearly the testimony was harmful.
In support of its position, Dupont points to the testimony of the Sidrans’ neighbor, Ethyl Knapp, who was also a successful orchid grower. Ms. Knapp testified by video deposition that her orchids likewise had serious problems during this time period. She maintained in her videotaped deposition that she never used Benlate. She testified that the more she watered her orchids, worse they did. She attributed this problem to the groundwater contamination.
Ms. Knapp’s testimony was impeached, however, because witness D’Armand Hull, a University of Florida agricultural agent in South Florida, testified that Ms. Knapp had Benlate on her premises and that her husband Charlie Knapp had applied it to the plants. Plaintiff Jill Sidran testified that she saw Ms. Knapp use Benlate. The Sidrans proffered that Ms. Knapp and her husband were at the time of her testimony plaintiffs in a pending lawsuit brought by Suniland residents against the dry cleaning establishment which had allegedly leaked the dry cleaning chemicals into the ground. In addition, Ms. Knapp’s testimony suffered from the same deficiency as that of Dr. Coble: it reveals no scientific basis for believing that water contamination at the tested levels would be harmful to orchids, and as already stated, there was no other expert testimony in the case to establish that point.[4]
For the stated reasons, we adhere to our earlier opinion of reversal and remand for a new trial.[5]

 Judge Suarez did not hear oral argument, but participated in the decision.

. Our original opinion described the test as showing 1.7 micrograms per liter. Opinion at 1042. This translates to 1.7 parts per billion.

. The Sidrans conceded that atrazine was not the cause of the problem with Benlate and maintained that the product was defective for other reasons.

. To use an analogy, it is common knowledge that chlorine is a toxic substance which in concentrated forms is hazardous to humans and plants. However, when applied in very small concentrations in municipal water sys-terns, it becomes an effective disinfecting agent. It is common experience that chlorinated water is safely consumed by humans and routinely applied to ornamental plants, including orchids, without ill effect. In the present case the question is whether the water contamination at the observed levels has a harmful effect on orchids. Dupont produced no competent scientific evidence to establish that it is harmful at those levels.

. At trial the court excluded a recording of a conversation between Ms. Knapp and a Du-pont representative in which she admitted that she used Benlate. The trial court ruled that the recording was not sufficiently authenticated for introduction into evidence, and the ruling regarding authentication was within the trial court's discretion. We need not reach the parties’ arguments regarding whether the tape (if it is ever properly authenticated) would be admissible for impeachment purposes.

. There was an interrogatory verdict asking the jury (1) whether Dupont placed Benlate DF on the market with a defect, and (2) whether Dupont was negligent. Dupont’s water contamination argument was relevant to both claims.