IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 7, 2004 Session

**SHERRY HUNTER, ADMINISTRATRIX OF THE ESTATE OF LAWRENCE HUNTER, DECEASED v. JAY MICHAEL URA, M.D., ET AL.**

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 96C-3784      Marietta M. Shipley, Judge**

_____

**No. M2002-02573-SC-R11-CV - Filed March 29, 2005**

_____

WILLIAM M. BARKER, J., with whom FRANK F. DROWOTA, III, C.J., joins, concurring in part, and dissenting in part.

I disagree with the majority's holding that the trial court correctly excluded the deposition testimony of Dr. Michael Hays because he did not state his opinion as to causation of plaintiff's injury to a "reasonable degree of medical certainty." I am of the opinion that his testimony should have been heard by the jury and that it was reversible error for the trial court to exclude it. While I fully agree with the majority's resolution of all of the other issues, I would nevertheless grant a new trial to the defendants because I am of the opinion that the jury should have been allowed to hear Dr. Hays' opinion.

By its decision today, the majority has held that in defending a medical malpractice action a defendant may only offer expert medical proof of causation if the opinions expressed on behalf of the defense are those held to a reasonable degree of medical certainty. In my view, such a conclusion is erroneous because it serves to shift the burden of proof and does not comport with the objectives of Tennessee Rules of Evidence 702 and 703.

In this case, the defendants sought to introduce the deposition testimony of Dr. Hays because he was diagnosed during trial with cancer and, according to defense counsel, was unable to testify in person. The trial court, after reviewing the deposition testimony, concluded that the opinions Dr. Hays offered were "speculative" and therefore not admissible.[1]

_____

[1] Despite the conclusion of the trial court and the majority that Dr. Hays' opinions were speculative, the record indicates otherwise. Specifically, Dr. Hays was asked at one point if he could state "to a reasonable degree of medical
(continued...)

-1-

In a medical malpractice case, the plaintiff, not the defendant, bears the burden of proof.[2] In most cases, expert medical testimony is required to establish both the recognized standard of care and a deviation from that acceptable standard of care, proximately causing the plaintiff's injury. See Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 95 (Tenn. 1999). The defendant, by contrast, is required to prove nothing. The defendant's task is to rebut the plaintiff's evidence so that a jury may properly evaluate and weigh the plaintiff's theory and supporting evidence.

In this case the plaintiff theorized that the decedent died as a result of cerebral hypoxia, i.e., insufficient oxygen to the brain, during surgery. The plaintiff theorized that the oxygen supply to the decedent's brain was diminished due to the fact that the surgery was performed with the decedent in a "semi-recumbent" or inclined position. Dr. William Witt testified for the plaintiff and was of the opinion that the decedent's inclined position during surgery made him "very susceptible to this

---

[1] (...continued)
certainty that that is what happened?" Dr. Hays responded, "I think I can say that." He went on to state that "[a]ll of [these factors] combined, I feel with medical certainty that that is what is responsible for this outcome." Later, near the end of his deposition, the following exchange took place:

> Question (by defense counsel): Is your opinion about causation, about the combination of these factors that combine to cause this problem with Mr. Hunter, do you hold that opinion to a reasonable degree of medical certainty?
> Answer (by Dr. Hays): Yes. I mean, that is what I get out of all this information is that that is, in my opinion a reasonable explanation of what may have caused this event. I know there are a lot of possibilities and maybes in there. I don't think anybody has a good understanding or can write down what they think exactly happened in this case. He had reasons to have diminished flow in various arteries to the brain. That, to me, provides a reasonable explanation of this outcome.

Dr. Hays added that the combination of factors was "the explanation that makes the most sense" to him. Finally, the question was posed, "[I]s it your opinion that these [three factors] more likely than not combined during the case to cause this outcome?" Dr. Hays' answered, "Yes."

I do agree, however, that on several occasions during his testimony Dr. Hays did state that his opinion provided a "possible" alternative cause for the plaintiff's injury other than the defendant's negligence.

[2] Pursuant to Tennessee Code Annotated section 29-26-115(a) (2000), the "Medical Malpractice Act," the plaintiff in a medical malpractice case has the burden of proving the following:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a); see also Cardwell v. Bechtol, 724 S.W.2d 739, 753 (Tenn. 1987).

type of injury" and that it was critical to properly monitor the patient to ensure that an adequate supply of oxygen was reaching the brain. Dr. Witt testified that Dr. Ura improperly monitored the decedent's cerebral perfusion pressure during surgery and that Dr. Ura's actions in this regard, along with his failure to take corrective measures, fell below the applicable standard of care and resulted in the decedent's death. Dr. Witt testified that he held these opinions to a reasonable degree of medical certainty.

To rebut the plaintiff's theory of causation and the testimony of Dr. Witt, the defendant sought to introduce the deposition testimony of Dr. Hays, a board-certified and practicing anesthesiologist. Dr. Hays held an opinion different from that of Dr. Witt. Although Dr. Hays agreed that the decedent's death was caused by reduced blood flow to the brain, it was his opinion that this reduced blood flow was the result of "a combination of factors" combining and concurring at one point in time. Dr. Hays identified these three factors as: (1) the decedent's abnormally elongated styloid bone, (2) the effects of the interscalene block administered to the decedent during the operation, and (3) the turning or positioning of the decedent's head during the operation.[3] In his opinion, each of these three factors possibly impeded blood flow to the decedent's brain and that they "all in combination provide an explanation" for the death. Dr. Hays' disagreed with the plaintiff's theory that the decedent's reduced blood flow resulted solely from being placed in an inclined position during surgery. Instead, Dr. Hays' opinion was that, based upon his medical experience, "something else had to account for this outcome." Dr. Hays further added that "I don't think anybody is going to be able to know exactly what happened to Mr. Hunter." However, Dr. Hays stated that his theory provided a reasonable explanation for the decedent's injury and death. In my view, this testimony should have been admitted and the jury, as the sole trier of fact, allowed to weigh and consider it in reaching its verdict.

Other jurisdictions that have addressed this issue have also held that expert witnesses testifying for the defense can present alternative theories of causation couched in terms of possibilities rather than probabilities. The facts of Sakler v. Anesthesiology Assocs., P.S.C., 50 S.W.3d 210 (Ky. Ct. App. 2001), are particularly relevant here. In Sakler an expert witness for the defendants in a medical malpractice case testified as to several possible causes of the plaintiff's injury, and that, in his opinion, one could "only talk about possibilities" rather than probabilities with respect to causation. 50 S.W.3d at 212-13. The witness further stated that, because the plaintiff had several aggravating factors that could potentially lead to the injury, it would be "presumptuous" to narrow causation to one factor. Id. at 212. The court held the testimony admissible in light of the

---

[3] Although there was no evidence that the decedent's head was turned to the side during surgery, Dr. Hays testified that he based his opinion in this regard on his own personal experience. Dr. Hays stated:

> I would say from experience in watching these cases that the head is at some point during the case turned to the non-operative side, away from the shoulder, either from pulling on the shoulder or starting with the head, the neck basically, straight but the head turned slightly to the left just as I stated before to get more exposure to the shoulder on the operative side. I would expect that it would be turned slightly to the left. I don't think I can quantify degrees of angle or anything like that.

fact that it was offered in support of the defendant, who bore no burden of proof, rather than the plaintiff. Id. at 213-14. The court provided the following analysis:

> These other possible causes need not be proved with certainty or more probably than not. To fashion such a rule would unduly tie a defendant's hands in rebutting a plaintiff's case, where as here, plaintiff's expert testifies that no other cause could have caused plaintiff's injury. . . . Were we to accept plaintiff's argument that once a plaintiff puts on a prima facie case, a defendant cannot rebut it without proving another cause, the resulting inequities would abound. For example if ninety-nine out of one hundred medical experts agreed that there were four equally possible causes of a certain injury, A, B, C and D, and plaintiff produces the one expert who conclusively states that A was the certain cause of his injury, defendant would be precluded from presenting the testimony of any of the other ninety-nine experts, unless they would testify conclusively that B, C, or D was the cause of injury. Even if all of defendant's experts were prepared to testify that any of the possible causes A, B, C or D, could have equally caused plaintiff's injury, so long as none would be prepared to state that one particular cause, other than that professed by plaintiff more probably than not caused plaintiff's injury, then defendant's experts would not be able to testify at all as to causation.

Sakler, 50 S.W.3d at 214 (quoting Wilder v. Eberhart, 977 F.2d 673, 676-77 (1ˢᵗ Cir. 1992)). Several other courts have addressed this issue and reasoned similarly. See Wilder, 977 F.2d at 676-77; Haas v. Zaccaria, 659 So. 2d 1130, 1133 (Fla. Dist. Ct. App. 1995); Mitchell v. Ensor, No. W2001-01683-COA-R3-CV, 2002 WL 31730908 (Tenn. Ct. App. Nov. 18, 2002).[4]

The majority surmises that allowing defendants to introduce evidence of other possible theories or causes would undermine the safeguards in Tennessee Rules of Evidence 702 and 703. I disagree. The safeguards provided by Rules 702 and 703 serve simply to screen out expert opinions based on untrustworthy or scientifically invalid facts and data or that would not substantially assist the trier of fact in determining an issue. See McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 266 (Tenn. 1997) (holding evidence was properly admitted upon a showing that it would substantially assist the jury to understand the evidence and the scientific principles underlying it were trustworthy and reliable). Alternative theories of causation, when presented by a qualified expert and supported by the current state of medical or scientific knowledge in the relevant field, serve to educate the jury as to other potential causes of the plaintiff's injury. Presenting such evidence allows the defendant

---

[4] As further support that this position is gaining acceptance, I note that American Jurisprudence provides the following in reference to proving negligence:

> Practice Guide: To convince the trier of fact that the alleged negligence is not the legal cause of the injury, the defendant may produce other possible causes of the plaintiff's injury; these possible causes need not be proved with certainty or more probably than not.

57A Am. Jur. 2d, Negligence § 441 (2004) (citation omitted).

to "test" the plaintiff's case and assists the jury in understanding the full import of the plaintiff's proof before assigning weight to the evidence and ultimately determining factual issues.

Pursuant to Rule 702, a witness who is qualified by "knowledge, skill, experience, training, or education" may testify if such testimony will "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702. The expert's opinions or inferences are admissible if based on facts or data "of a type reasonably relied upon by experts in the particular field." Tenn. R. Evid. 703. In the present case, there was no dispute that Dr. Hays, as a board-certified practicing anesthesiologist, was qualified to offer an opinion in this case. Throughout his deposition, Dr. Hays emphasized that he based his opinions on current medical literature along with his own medical experience and expertise. For example, Dr. Hays testified that he had participated in theses types of surgical procedures on numerous occasions, although never in a similar one having this outcome. He had also reviewed several medical treatises relating specifically to blood pressure, anesthesia and related issues relevant to this case. Furthermore, Dr. Hays had also reviewed the decedent's medical history and the depositions of the plaintiff's medical experts, all prior to forming an opinion as to the possible causes of death.

Based upon these sources, Dr. Hays opinion was that the decedent's death was caused by reduced blood flow to the brain, and that this reduced blood flow was the result of "a combination of factors that all happened at one point in time." In his opinion, each of these three factors could have possibly impeded blood flow to the decedent's brain and that they "all in combination provide[d] an explanation" for the death.

Dr. Hays' stated that each of the three possible causes of death were supported by scientific or medical literature or medical evidence in this case. He testified that he had reviewed the autopsy report revealing the decedent's elongated styloid bone and that medical literature "seemed to support" that this could impinge on the carotid artery. The doctor stated that from his own medical knowledge an interscalene block, as administered to the decedent, could impede blood flow through the carotid artery. Also, the treatises Dr. Hays researched supported his theory that turning a patient's head to one side would lessen blood flow to the brain. Dr. Hays also testified concerning the limitations of medical science in this area and was of the opinion that no medical expert could say with certainty what caused the death.

In my view, the jury should have been allowed to hear Dr. Hays' testimony that these three factors possibly combined to cause the decedent's death, that these factors provided a reasonable alternative cause for his death, and that no one could be certain as to the cause of death. In my view, for a trial court to exclude such evidence does an injustice to the defendant and is an abuse of discretion. See State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). I am not, as the majority suggests, substituting my opinion for that of the trial court. I conclude that the trial court indeed abused its discretion because it "applied an incorrect legal standard, or reached a decision which [was] against logic or reasoning that caused an injustice to the party complaining." Id. (citing State v. Schuck, 953 S.W.2d 662, 669 (Tenn. 1997). Accordingly, in the present case I would hold, as did the Court of

-5-

Appeals, that the trial court committed reversible error in excluding the deposition testimony of Dr. Hays and that the defendants are entitled to a new trial.

I am authorized to state that Chief Justice Drowota joins with me in this concurring and dissenting opinion.

_____
WILLIAM M. BARKER, JUSTICE