DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PABLO GUZMAN, M.D.,** and **HOLY CROSS HOSPITAL, INC.,**
Appellants,

v.

**MARIA JOANNA LAZZARI,** the Plenary Guardian of
the Person and Property of **MORELA LAZZARI,** the Ward,
Appellee.

Nos. 4D2023-0268 & 4D2023-0384

[July 3, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carol-Lisa Phillips, Judge; L.T. Case No. CACE21-010977.

Austin Atkinson of Hall Booth Smith, P.C., Atlanta, Georgia, and John Goran of Hall Booth Smith, P.C., Miami, for appellants.

Philip D. Parrish of Philip D. Parrish, P.A., Miami, and Ivan F. Cabrera, Brent M. Reitman, and Scott S. Liberman of Liberman Cabrera Thompson & Reitman, PLLC, Fort Lauderdale, for appellee.

MAY, J.

The defendant's burden of proof for a *Fabre*[1] defense in a medical malpractice action is at issue in this appeal. Specifically, we must decide whether a defendant doctor must provide an expert witness in the specialty field of the *Fabre* defendant to pursue that defense. Under the limited circumstances here, we hold an expert witness was unnecessary. We also find error in the exclusion of a defense witness. We therefore reverse and remand the case for a new trial on liability and damages.

---

[1] *Fabre v. Marin*, 623 So. 2d 1182, 1185–87 (Fla. 1993), *receded from by Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc.,* 659 So. 2d 249 (Fla. 1995).

## THE FACTS

- ### *The Underlying History*

The defendant doctor began treating the patient in 2012.[2] In 2013, the doctor diagnosed the patient with mitral-valve stenosis, recommended a mitral valve replacement, and suggested a cardiac surgeon. The patient chose a different cardiac surgeon and underwent cardiac surgery in January of 2014.

The surgery went well, and the cardiac surgeon discharged the patient from the hospital three days later. He did not prescribe an anticoagulant medication for the patient at that time. The patient was next seen in the office by the cardiac surgeon's colleague a couple of weeks after surgery. The colleague also did not prescribe an anticoagulant medication.

The patient returned to the doctor approximately one month after surgery. According to the doctor's evaluation, the patient was not experiencing any post-surgery complications. He did not prescribe an anticoagulant medication because "it could have caused major bleeding." Two days later, the patient suffered a stroke, leaving her incapacitated and in need of full-time care.

Trial testimony revealed that anticoagulant therapy is recommended for the first ninety days after mitral valve replacement surgery by both the American College of Cardiology and the American Heart Association. The doctor was a member of both organizations and familiar with this recommendation.

The plaintiff sued the doctor, the cardiac surgeon, and their respective hospitals for the alleged negligence in not prescribing an anticoagulant medication.[3]

- ### *The Partial Summary Judgment and Trial*

In his answer, the doctor pled the cardiac surgeon was a potential *Fabre* defendant. The plaintiff ultimately settled with the cardiac surgeon and Jackson Memorial. Only two defendants—the doctor and Holy Cross Hospital—remained in the case for trial.

---

[2] The patient's sister is her guardian and the plaintiff.

[3] Holy Cross was sued vicariously for the negligence of the doctor. Reference to the doctor includes Holy Cross Hospital throughout the opinion.

The plaintiff moved for summary judgment on the doctor's *Fabre* defense, arguing the doctor failed to retain an expert witness on the applicable standard of care for the cardiac surgeon. The trial court heard the motion on the first day of trial.

The trial court granted the motion, specifically finding:

> that it has not been presented with competent evidence from a qualified expert who is capable of rendering an opinion on the standard of care for [the cardiac surgeon]. . . , pursuant to Florida Statutes 766.102(5)(a)(1) and (2) which requires that in order to render standard of care opinions against a "specialist" . . . [the witness must] ". . . *Specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered . . .*".

> Given the above ruling, [the cardiac surgeon and hospital] shall not be listed as *Fabre* Defendants on the verdict form which will be submitted to the jury.

The trial court then heard argument on whether the doctor could call the cardiac surgeon as a witness.

The plaintiff argued the cardiac surgeon's testimony was minimally probative and unfairly prejudicial for three reasons. First, the plaintiff was incapable of refuting the cardiac surgeon's deposition testimony that he used a bioprosthetic valve instead of a mechanical valve based on the patient's refusal to take anticoagulant medication. Second, the cardiac surgeon's testimony was inconsistent with his medical records, casting doubt on the credibility of his potential trial testimony. And third, it would lead to a "trial within a trial" because of the evidence needed for the plaintiff to refute the cardiac surgeon's testimony.

The trial court did not allow the doctor to call the cardiac surgeon as a witness, suggesting his testimony would be cumulative.

- ***The Jury Verdict and Damage Award***

The jury returned a verdict in the plaintiff's favor, awarding her one million dollars. The jury's itemized verdict on damages read:

Past pain and suffering                 -0-
(*$500,000 requested*)

3

| | |
|---|---|
| Future pain and suffering | $576,00 |
| Past medical expenses (*$545,077 requested*)[4] | $174,000 |
| Future medical expenses (*$4,272,693 requested*) | -0- |
| Past lost earning capacity | $250,000 |
| Future lost earning capacity | -0- |

The plaintiff objected to the verdict as inconsistent. The trial court noted the plaintiff's objections but took no action.

- ***The Additur***

The plaintiff then moved for an additur, or alternatively a new trial on damages. The plaintiff requested an additur of:

| | |
|---|---|
| Past pain and suffering | $500,000 |
| Past medical expenses | $545,077 |
| Future medical expenses | $4,272,693 |

The defendants opposed the plaintiff's motion, arguing the verdict was "fair and just." The doctor argued the motion for additur should be denied because the jury must have decided the doctor's negligence was not the legal cause of the past pain and suffering damages, past medical expenses, and future medical expenses.

The trial court granted the additur, finding the verdict inconsistent and inadequate. The trial court awarded the following amounts:

| | |
|---|---|
| Future medical expenses | $ 4,272,693 |
| Past medical expenses | $ 371,077 |

---

[4] It is suggested that the zero award for past medical expenses might be attributable to the plaintiff's inadvertent reference to insurance during her testimony.

Past pain and suffering                                    $ 250,000

The additur order gave the doctor fifteen days to accept or reject it.

The doctor timely filed a statement rejecting the additur and appealed the additur order.

The plaintiffs moved for entry of a final judgment and set the matter for hearing. The doctor's lawyer advised plaintiff's counsel to submit the order and cancel the hearing. The trial court entered final judgment in the plaintiff's favor. The doctor filed a second appeal from the final judgment.

## THE ANALYSIS

- ### *The Partial Summary Judgment on the* Fabre *Defense*

On appeal, the doctor argues the trial court erred in granting the plaintiff's motion for partial summary judgment on the *Fabre* defense. He argues he was not required to provide an expert witness on the cardiac surgeon's standard of care to ask the jury to apportion fault as to him.

The plaintiff responds the doctor misunderstands the law and that his reliance on *Haas v. Zaccaria,* 659 So. 2d 1130 (Fla. 4th DCA 1995), is misplaced. The plaintiff suggests the trial court correctly found the doctor was required to provide expert testimony on the cardiac surgeon's culpability under section 766.102(5), Florida Statutes (2013).

The parties agree the standard of review applicable to the partial summary judgment order is de novo. *See D.H. v. Adept Cmty. Servs., Inc.*, 271 So. 3d 870, 877 (Fla. 2018).

"[I]n a medical malpractice action, the burden is on the plaintiff to establish that the care provided . . . was not that of a reasonably prudent physician." *Saunders v. Dickens*, 151 So. 3d 434, 441 (Fla. 2014) (emphasis omitted); *see also* § 766.102(1), Fla. Stat. (2013).

A defending medical provider can negate a plaintiff's claim for medical malpractice by proving his/her care conformed to that of a "reasonably prudent" physician. § 766.102(1), Fla. Stat. (2013). A defending medical provider can also "allocate any or all fault to a nonparty" for the "purpose[] of apportioning damages." § 768.81(3)(a)2., Fla. Stat. (2022).

5

The general standard of care for a professional health-care provider is "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." § 766.102(1), Fla. Stat. (2013). Only experts are allowed to testify regarding a medical provider's applicable standard of care. § 766.102(5), Fla. Stat. (2013).

Because the plaintiff bears the burden of proof in a malpractice case, it follows that plaintiffs are required to advance expert testimony under section 766.102, defendants are not. Indeed, "nothing in section 766.102(5) requires a defendant health care provider to present independent expert testimony to oppose an allegation of the breach of standard of care." *Carrasquillo v. Metzler*, 376 So. 3d 736, 741 (Fla. 4th DCA 2024). Any such mandate would "improperly shift the burden of proof" in contravention of section 766.102 (a)'s plain language allocating that burden to the plaintiff. *Id.*

In *Carrasquillo,* we faced a similar, but not identical, argument. There, the plaintiff argued the defendant was "required to present independent expert testimony on the standard of care issue" to avoid an adverse ruling on the plaintiff's renewed motion for directed verdict. *Id.* But we "reject[ed] [the] [p]laintiff's reading of section 766.102(5), Florida Statutes." *Id.*

We held the defendant was not required to produce an expert to defend against the plaintiff's negligence claim. *Id.* The defendant could rely solely on the defendant's own denial of liability. *Id.* To do otherwise would constitute an impermissible shifting of the burden of proof. *Id.*

Here, the plaintiff bore the burden to present expert testimony that the doctor breached the standard of care. After the plaintiff did so, the jury was free to accept or reject that testimony and free to return a verdict for either party. *See Haas*, 659 So. 2d at 1133. In this case, unlike *Carrisquillo*, the doctor did provide an expert witness even though not required to do so.

But the nuanced question in this case is whether the defendant's burden to prove a *Fabre* nonparty's proportional fault requires him to provide expert testimony? In this case, we hold it does not.

Here, the defendant argues section 768.81—which abolished joint-and-several liability—limits a defendant's liability to damages proportionate to its "percentage of fault." *See* § 768.81(3), Fla. Stat. (2022); *see also Fabre*, 623 So. 2d at 1185–87. *Fabre* allows a jury to consider the fault of anyone,

including nonparties, who contribute to the plaintiff's injuries. *Fabre*, 623 So. 2d at 1185–87.

> When a plaintiff has been treated by successive physicians and at some point during the course of treatment has sustained a single injury, absent the proof that the negligence, if any, of the initial tortfeasor was the proximate cause of the injury as a matter of law, the jury should be presented all relevant information concerning the plaintiff's care and treatment so that it can appropriately determine how the injury occurred. In the instant case, with the timely presentation of all the evidence, a jury could have concluded . . . it was [another doctor's] actions which caused the injury or, alternatively, that the acts claimed to have been committed were not "demonstrably separable in time and effect," both doctors being jointly responsible for the injury.

*Barrios v. Darrach*, 629 So. 2d 211, 213 (Fla. 3d DCA 1993) (citation omitted).

Section 768.81(3)(a)2. requires the defendant to prove "by a preponderance of the evidence, the fault of the nonparty in causing the plaintiff's injuries." The statute is conspicuously silent on whether that burden mandates the same type of expert witness testimony required of the plaintiff.

This case presents an unusual factual situation, as the very allegation of negligence (failure to prescribe an anticoagulant medication) is the same for both the doctor (cardiologist) and the *Fabre* cardiac surgeon—even though they are not technically in the same specialty. Here, the cardiac surgeon did not prescribe the anticoagulant medication following surgery; his colleague did not prescribe the anticoagulant medication in the follow-up visit two weeks later. And ultimately, the doctor did not prescribe the anticoagulant medication.

Similar to *Barrios*, this is a case where the patient was seen by successive medical providers, resulting in a single injury. This is not a case where the cardiac surgeon's alleged negligence was different than that of the doctor. In fact, the plaintiff's expert testified that had an anticoagulant medication been given at any point following the surgery, the plaintiff would not have suffered the stroke. One could consider this the very expert testimony the plaintiff argues was necessary to support the doctor's *Fabre* defense.

The defendant doctor was able to testify about his decision not to prescribe the anticoagulant medication and why his decision did not constitute negligence. The doctor's testimony could either have shifted responsibility to the *Fabre* defendant or supported the position that neither of them were negligent.

We hold that a separate specialty expert witness was unnecessary for the jury to apportion fault between the doctor and the cardiac surgeon in this case. Because the negligence allegations were the same for both the doctor and the *Fabre* defendant, it was unnecessary to provide an expert witness in cardiac surgery to request the jury to apportion fault between them. We therefore reverse the partial summary judgment.

- ### *The Exclusion of The Cardiac Surgeon as a Witness*

The defendant next argues the trial court abused its discretion in excluding the cardiac surgeon's testimony as "cumulative." *See Wax v. Tenet Health Sys. Hosps., Inc.*, 955 So. 2d 1, 5 (Fla. 4th DCA 2006), *reh'g granted id.* at 6. The plaintiff responds the trial court properly followed *Cantore v. West Boca Medical Center, Inc.*, 254 So. 3d 256 (Fla. 2018), and *Saunders v. Dickens*, 151 So. 3d 434 (Fla. 2014). The plaintiff argues the cardiac surgeon's testimony would have been more prejudicial than probative because it would have included the patient's unwillingness to take anticoagulant medication, a fact she was no longer capable of refuting.

The plaintiff makes three additional arguments. First, the plaintiff would be unable to disclose to the jury that the cardiac surgeon was once a defendant. Second, the cardiac surgeon's records were a sufficient substitute for the cardiac surgeon's testimony. And third, the testimony would have resulted in a trial within a trial, as the plaintiff would introduce evidence the cardiac surgeon almost always used a bioprosthetic valve in his surgeries regardless of the patient's willingness to take the anticoagulant medication.

"The standard of review for evidentiary rulings is abuse of discretion, limited by the rules of evidence." *Devalon v. Sutton*, 344 So. 3d 30, 31 (Fla. 4th DCA 2022) (quoting *Bank of N.Y. v. Calloway*, 157 So. 3d 1064, 1069 (Fla. 4th DCA 2015)). A trial court judge has no discretion, however, to exclude relevant evidence that is otherwise admissible. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1259 (Fla. 2014).

All relevant evidence is admissible *unless* it is (1) needlessly cumulative *and* (2) its probative value is "substantially outweighed" by the evidence's

8

cumulative nature. *Gutierrez v. Vargas*, 239 So. 3d 615, 625 (Fla. 2018) (quoting § 90.403, Fla. Stat. (2017)). A trial court may exclude relevant evidence *only if* its "probative value is substantially outweighed by the danger of . . . needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2022).

A witness's testimony is *not* cumulative merely because it is similar to other testimony. *See Gutierrez*, 239 So. 3d at 626. Conversely, a witness is permitted to confirm the view of another, and a trial court generally lacks the discretion to exclude merely confirmatory testimony. *See id.*

While the cardiac surgeon's testimony might have been somewhat duplicative, that fact alone was insufficient to exclude his testimony. Here, the cardiac surgeon could have explained why he did not prescribe anticoagulant medication, even if he was not permitted to testify about the patient's reluctance to take the drug. After all, it was his initial decision that kept the patient off the anticoagulant medication for approximately one month following the surgery and prior to the doctor seeing the patient.

There was no need to explain why the cardiac surgeon was not a defendant simply because he testified. The trial court had discretion to limit the testimony to keep out improper evidence and prevent a "trial within a trial" regarding the cardiac surgeon's preferences. Records were no substitute for the cardiac surgeon's testimony. The cardiac surgeon's testimony would have been highly relevant and could have explained why the anticoagulant medication was not prescribed long before the doctor saw the patient post-surgery.[5]

Finding error in the exclusion of the cardiac surgeon as a witness, we reverse on this ground as well. Because we reverse the partial summary judgment and the trial court's decision to exclude the defense witness, we need not reach the additur issue.

We reverse and remand the case for a new trial on liability and damages.

---

[5] The two cases on which the plaintiff relied do not require a different outcome. First, *Saunders* dealt with the propriety of defense counsel's closing argument concerning the burden of proof and not the admissibility of evidence. *See Cantore*, 254 So. 3d at 264–66 (Canady, J., dissenting). Second, "*Cantore* involve[d] the admissibility of certain deposition testimony from a 'subsequent' treating physician" on what he "would have done" based on a hypothetical. *Id.* at 264, 266–67. Those cases are factually distinguishable.

*Reversed and remanded.*

DAMOORGIAN and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

10