PER CURIAM.
Appellant, R.J. Reynolds Tobacco Company, challenges a final judgment awarding Appellee, Peter Mack, Jr., as personal representative of the estate of his father Peter Mack Sr., $510,000 in damages following a jury verdict in Appellee’s favor. Appellant contends that the trial court erred in excluding its alternative causation evidence, in allowing Appellee to show the jury a “day in the life” video of his father (“the decedent”), and in allowing Appellee to use the findings as set forth in Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), to establish elements of his claims. We find no abuse of discretion as to the admission of the video and no error with respect to the use of the Engle findings. See R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060 (Fla. 1st DCA 2010), review denied, 67 So.3d 1050 (Fla.2011), cert. denied, — U.S. —, 132 S.Ct. 1794, 182 L.Ed.2d 617 (2012).[1] We do, however, agree with Appellant that the trial court erred in excluding its alternative causation *246 evidence on the basis that its expert could not testify as to causation within a reasonable degree of medical probability. We, therefore, reverse and remand for a new trial.
In June 2008, the decedent and his wife brought suit against Appellant, seeking damages for the decedent’s laryngeal cancer and chronic obstructive pulmonary disease (“COPD”), both of which were allegedly caused by the decedent’s long history of smoking cigarettes manufactured by Appellant. After the decedent’s death, Appellee, as personal representative of the estate, was substituted as a party in the lawsuit. Appellee filed a motion in limine seeking to preclude any reference, argument, question, or testimony insinuating that the decedent’s illnesses were caused by any occupational and environmental hazards he faced while working as an Air Force aircraft mechanic or as an automobile mechanic. Appellee filed a second motion in limine, seeking to preclude any reference to the decedent’s family history of cancer. The trial court granted the motions subject to a proffer by Appellant to establish that the “fact exists” and that the “evidence supports the conclusion [Appellant] intends to draw from the existence of the fact.”
Appellant’s subsequent proffer included excerpts from the depositions of James Klaas, an Air Force aircraft mechanic who worked with the decedent in the 1960s, Charles Locklear, the former service manager from the car dealership where the decedent worked as a service technician, and Roger Tolbert, one of the decedent’s employees at a gas station. Klaas testified about asbestos exposure while working on aircraft, Locklear testified about asbestos exposure while working on automobile brakes, something that the decedent did while employed at the car dealership, and Tolbert testified that the decedent performed all brake repairs during the time that Tolbert worked for him. Also included in the proffer was the affidavit of Theodore Hogan, Ph.D., a practicing and consulting hygienist for industrial, commercial, and educational clients. After reconstructing the decedent’s exposures as an aircraft and automobile mechanic, Hogan found sufficient evidence to conclude that the decedent was exposed to a variety of chemicals and toxins for twenty-two to thirty-eight years. Dr. William Fee, an ear, nose, and throat doctor whose affidavit and deposition were included in the proffer as well, opined that Dr. Hogan’s deposition provided a sufficient basis to conclude that the decedent was exposed to a variety of occupational exposures as an aircraft and automobile mechanic that increased his risk for laryngeal cancer. He also opined that the decedent’s extensive family history of non-smoking-related cancers increased his risk for laryngeal cancer independently of smoking. Dr. Sanford Barsky, a pathologist, whose deposition was included in the proffer, opined that the decedent had a very significant occupational and environmental exposure to solvents and exhausts, possible asbestos, and hydrocarbons, all of which, according to Dr. Barsky, were risk factors for laryngeal cancer and may have played a role in the genesis of the decedent’s cancer. Appellant also included numerous articles, including several published in the International Journal of Cancer, that described a link between certain occupational and environmental exposures, including asbestos, and laryngeal cancer.
During the trial, Appellee’s experts opined that the decedent’s laryngeal cancer and COPD were more likely than not caused by his heavy smoking. After Ap-pellee rested his case, Appellant called Dr. Fee, who testified that, given the fact that *247 the decedent stopped smoking approximately sixteen years prior to his laryngeal cancer diagnosis, the decedent’s risk of getting cancer as a result of smoking was the same as someone who never smoked.
During a proffer, Dr. Fee testified that the decedent had a strong family history of cancer — “[m]other with cancer, two brothers with prostate cancer, two sisters with breast cancer, one sister with either ovarian or uterine cancer.” He testified that the decedent’s family history of cancer was much more important in causing his laryngeal cancer as compared with his smoking. He also testified that the decedent had a very significant asbestos exposure. When asked if he could testify before the jury with any reasonable degree of medical certainty as to what caused the decedent’s cancer, he replied, “Well, I can say this: It had — it had more of a role than his declining risk of tobacco.”
In response to the trial court’s question of whether there had to be a consensus in the medical community as to the causes of laryngeal cancer, Appellant’s counsel replied in part, “Yes, Your Honor, there should be a consensus. It has to meet the Frye standard.”[2] Appellant’s counsel later stated that she had misspoken regarding the application of the Frye standard and that Dr. Fee’s testimony was admissible as pure opinion testimony.[3] The court explained that it was going to deny the “Frye request” and stated that Appellant was going to have to convince it that Dr. Fee’s experience had demonstrated certain causal relationships before his testimony would be admissible as pure opinion testimony. Appellant’s counsel then proffered Dr. Fee’s testimony regarding his experience with the causes of laryngeal cancer. He affirmatively responded when asked if in his personal experience and training asbestos and other industrial compounds could cause laryngeal cancer and whether it was important to know a patient’s family history if and when he is called to assess the cause of laryngeal cancer. He testified on cross-examination during the proffer that he was not saying to a degree of medical certainty that any “of these things” caused the decedent’s cancer. Instead, he was saying that it was possible that they did. The court later stated in part:
[I]f he’s going to offer an opinion whether or not it affected this particular [decedent], I think he has to give an opinion within a reasonable degree of scientific probability that it’s more likely than not and if he can’t do that, then I don’t think he can testify about it.
This is an expert opinion and expert opinion has got to say that, you know, this is more likely than not within a reasonable degree of probability of medical certainty that this is the cause. And if he can testify about that, then we’ll explore that. If he can’t, then he’s not going to be able to do so.
In the presence of the jury, the trial court subsequently informed Dr. Fee that he could testify about the “general causes [of laryngeal cancer] based on experience.” Dr. Fee testified that the causes included heredity, smoking, alcohol, an alcohol and *248 smoking combination, asbestos, gasoline fumes, diesel fumes, and solvents. Given the trial court’s earlier ruling, no evidence was introduced regarding the decedent’s occupational exposures, and none of Appellant’s experts testified regarding the effect those exposures had on the decedent.
The jury found in Appellee’s favor, determining that the decedent was addicted to a cigarette manufactured by Appellant and that the addiction was the legal cause of his laryngeal cancer and COPD, that Appellant’s negligence was a legal cause of the decedent’s laryngeal cancer and/or COPD, and that the defective and unreasonably dangerous cigarettes that Appellant put on the market were a legal cause of his cancer and/or COPD. The jury determined that Appellant was 51% at fault and that the decedent was 49% at fault. It awarded $1,000,000 in damages. The trial court denied Appellant’s motion for a new trial and entered a final judgment awarding Appellee $510,000. This appeal followed.
Appellant primarily contends on appeal that the trial court erred in excluding its alternative causation evidence on the basis that Dr. Fee was unable to testify that the alternative causes were more likely than not the cause of the decedent’s laryngeal cancer. We agree. Appellee, as the plaintiff below, had the burden of proof with regard to the causation of the decedent’s illnesses. See Clampitt v. D.J. Spencer Sales, 786 So.2d 570, 573 (Fla.2001). By excluding Appellant’s alternative causation evidence on the basis that its experts could not testify to a reasonable degree of medical probability, the trial court improperly shifted the burden of proof as to causation to Appellant. Contrary to the trial court’s reasoning, Appellant was not attempting to prove that something else caused the decedent’s laryngeal cancer. Instead, it was attempting to diminish Appellee’s expert testimony that smoking was the probable cause of the cancer by introducing other possible causes that were pertinent to the decedent’s situation.
Our conclusion that the trial court improperly shifted the burden to Appellant is supported by the majority of courts that have addressed this issue. For instance, in Haas v. Zaccaria, 659 So.2d 1130, 1133 (Fla. 4th DCA 1995), the Fourth District concluded that even if a plaintiff in a medical malpractice case must prove medical negligence by a reasonable medical probability, that did not mean that the defendant was precluded from offering evidence of possible explanations of the plaintiffs injury other than his or her alleged negligence. The Nevada Supreme Court more recently held that where a defense expert’s testimony is used to contradict the plaintiffs causation theory by comparing that theory to other plausible causes, the defense expert does not need to state each additional cause to a greater-than-fifty-percent probability as long as the alternative causation theory is competent and supported by relevant evidence or research. Williams v. Eighth Judicial Dist. Court of State, 262 P.3d 360, 369 (Nev.2011); see also Wilder v. Eberhart, 977 F.2d 673, 676 (1st Cir.1992) (holding that a defendant in a medical malpractice case may produce other possible causes of the plaintiffs injury and that those possible causes need not be proven with certainty or more probably than not); Benkendorf v. Advanced Cardiac Specialists Chartered, 228 Ariz. 528, 269 P.3d 704, 708 (Ariz.Ct.App.2012) (agreeing with the majority of jurisdictions that have held that an expert defense witness who is called to address causation in a medical malpractice case may testify about possible causes of the plaintiffs injury but need not prove another cause of the plaintiffs injury); Sakler v. *249 Anesthesiology Assocs., P.S.C., 50 S.W.3d 210, 212 (Ky.Ct.App.2001) (holding that defendants in medical malpractice actions may introduce expert witness testimony to rebut a plaintiffs expert witness testimony couched in terms of “reasonable medically probability” even though the defendant’s expert witness testimony is couched only in terms of “possibility”).
We reject Appellee’s alternative argument that any error in this case was harmless given the fact that the trial court permitted Dr. Fee to testify about the general causes of laryngeal cancer based upon his experience. Although Dr. Fee testified that heredity and asbestos were two possible causes of laryngeal cancer, Appellant was not permitted, based upon the trial court’s erroneous alternative causation ruling, to introduce any evidence concerning the decedent’s strong family history of cancer and his occupational exposures. Without that evidence, the only cause as testified to by Dr. Fee that the decedent had any known connection with was smoking. Therefore, the trial court’s error was not harmless. See Witham v. Sheehan Pipeline Constr. Co., 45 So.3d 105, 109 (Fla. 1st DCA 2010) (noting that the test for harmless error in a civil case is whether, but for such error, a different result may have been reached).
Based upon the foregoing, Appellant is entitled to a new trial at which it should be permitted to introduce evidence of the decedent’s occupational exposures and family history of cancer. Appellant should also be given the opportunity to introduce any expert testimony it may have as to the possible causes of the decedent’s laryngeal cancer. We offer no opinion on the admissibility of the expert testimony other than to say that it may not be precluded on the basis that Appellant’s experts are unable to testify as to a reasonable degree of medical probability.[4]
REVERSED and REMANDED for a new trial.
DAVIS, VAN NORTWTCK, and PADOVANO, JJ., concur.

. We note that the Florida Supreme Court has accepted jurisdiction of Philip Morris USA, Inc. v. Douglas, 83 So.3d 1002 (Fla. 2d DCA 2012), which certified as an issue of great public importance the question of whether accepting as res judicata the Engle findings violates the tobacco companies’ due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.

. The Frye standard applies when an expert attempts to render an opinion that is based upon new or novel scientific techniques. Marsh v. Valyou, 911 So.2d 543, 547 (Fla.2007). The proponent of the evidence bears the burden of establishing by a preponderance of the evidence the general acceptance of the underlying scientific principles and methodology. Id.

. The Frye standard is inapplicable to pure opinion testimony because that type of testimony is based on the expert's personal experience and training. Marsh, 977 So.2d at 548.

. The record is not sufficient for us to address the admissibility of Appellant’s expert testimony under Frye because, as Appellant acknowledged below, no actual Frye hearing was conducted. We also note that very limited evidence was introduced to support a conclusion that Dr. Fee’s testimony was pure opinion testimony. On remand, the issue should be guided by the supreme court’s opinion in Marsh, 977 So.2d at 543.