[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14060
_____

D.C. Docket No. 3:09-cv-10928-RBD-JBT


THELMA AYCOCK,
as Personal Representative of the Estate of Richard Aycock ,

Plaintiff - Appellee,

versus

R.J. REYNOLDS TOBACCO COMPANY,
individually and as successor by merger to the Brown
and Williamson Tobacco Corporation and the American
Tobacco Company,

Defendant - Appellant,


PHILIP MORRIS USA, INC., et al,                          Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 16, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and SILER,[*] Circuit Judges.

SILER, Circuit Judge:

Defendant R.J. Reynolds Tobacco Company (Reynolds) appeals the district court's final judgment following a jury verdict awarding compensatory damages in the amount of $5.9 million to the plaintiff, Thelma Aycock (Thelma), for her "loss of support and services, loss of companionship and protection, and her mental pain and suffering, as a result of her husband's lung cancer and death," the legal cause of which was attributed to his addiction to smoking cigarettes manufactured by the defendant. Reynolds asks this court to reverse the judgment against it and order a new trial, alleging the district court erred in excluding evidence of the deceased's alcohol abuse as it related to his death, and because the denial of a continuance unfairly infringed on Reynolds' right to counsel of its choice. For the following reasons, we **REVERSE** and **REMAND** for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Thelma, a Florida resident, brought this wrongful death action on behalf of her husband, Richard Aycock (Richard), under the Florida Wrongful Death Act. She alleged that her husband contracted lung cancer as a result of his addiction to cigarettes manufactured by Reynolds and others who were later dropped or

[*] Hon. Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

2

dismissed from the suit.  Raising various claims under Florida law, she sought compensatory and punitive damages from the manufacturers of the cigarettes Richard had smoked for the duration of their marriage.

The Aycocks were married for over fifty years until Richard's death in 1996. Prior to their marriage, Richard began smoking and gradually increased the amount of cigarettes he smoked daily throughout the rest of his life. From the mid-1980s until his death, he smoked up to four packs of cigarettes per day. He engaged in chain-smoking, and woke up in the middle of the night to smoke. At trial, Thelma used this behavior as proof of Richard's addiction to nicotine.

In addition to his smoking, Richard also had a history of alcohol abuse that allegedly had affected his marriage. At trial, it was established that Richard drank while married to Thelma, and that she did not approve of his drinking. She claimed his "[getting] a little tipsy" made her angry. In a pre-trial deposition, she admitted that she once left him and took their children out of the home because of his drinking. Their son, Ronald, called his dad an alcoholic, and said that Richard's alcoholism affected his work habits. Ronald also detailed an occasion on which Richard tried to strike him while under the influence of alcohol. The birth of Richard's first grandchild prompted him to attend Alcoholics Anonymous meetings for a time so that he could stop drinking. However, when questioned at trial, Thelma denied that his alcohol abuse affected their marriage.

3

In 1996, Richard was admitted to the hospital complaining of confusion, disorientation, and impairment of equilibrium. He was then diagnosed with lung cancer that had metastasized to his brain. Later that year, he died. The cause of death listed on his death certificate was lung cancer; the metastasis to the brain was not mentioned. The hospital recommended a pulmonary biopsy to confirm lung cancer, but it was refused by the family.

Richard was originally a member of a class represented in Engle v. Liggett Group, Inc., a smokers' class action lawsuit. The Florida Supreme Court decertified the class in Engle, citing the infeasibility of continued class action treatment because "individual issues such as legal causation, comparative fault, and damages predominate." Engle v. Liggett Group, Inc., 945 So. 2d 1246, 1268 (Fla. 2006) (per curiam). But the court authorized subsequent individual actions in which the Engle jury's determinations on causation, negligence, breach of warranty, concealment, and conspiracy findings would have "res judicata effect." Id. at 1269. In the wake of the decertification, Thelma filed this wrongful death suit. Since this case was an Engle-progeny case, the Engle jury's findings had res judicata effect in this case.

The trial was originally scheduled to begin on April 30, 2012. However, five days before trial, the hospital where Richard was treated prior to his death discovered 94 pages of previously undisclosed medical records pertaining to his

4

case. Thus, the parties to the trial sought—and were granted—a continuance of the trial. The trial was rescheduled for March 18, 2013. However, five days before trial, one of Thelma's expert witnesses suffered an injury that would have prevented him from testifying. Thelma sought another continuance, which the court granted.

The trial was rescheduled for April 8, 2013. However, the trial's new date created scheduling conflicts for Reynolds' lead counsel, Jeffrey L. Furr, who had trials scheduled from mid-April until July 2013. These conflicts included a tobacco class action trial in West Virginia state court and four other Engle progeny cases. In order to preserve its right to the lead counsel of its choice, Reynolds moved for a further continuance until August 2013, so that Furr could participate as Reynolds' chief counsel. However, the court denied this motion, and the trial proceeded as scheduled.

Before the trial began, the court granted Thelma's motion *in limine* seeking to exclude evidence of Richard's alcohol consumption. Specifically, Thelma took issue with parts of the testimony of two expert witnesses for Reynolds. First, she noted that Dr. Brian Peterson's report specifically claimed that (1) additional clinical and diagnostic data was needed to determine whether Richard had cancer; (2) additional data was needed to determine the cause of Richard's death; and (3) due to multiple risk factors, the etiology of Richard's cancer cannot be determined.

5

Since Dr. Peterson did not mention any relationship to alcohol consumption, Thelma argued that Richard's alcohol use was irrelevant to determining what caused his death. She also noted that Reynold's addiction expert, Dr. Daphne Dorce, noted that there was no link between Richard's ability to stop drinking and his ability to stop smoking. Thelma alleged that, because Richard's history of alcohol use was irrelevant to the issues present and because its admission would be highly and unfairly prejudicial, it should be excluded from trial.

The court also enforced the motion *in limine* consistently. No discussion of Richard's alcohol use in the context of causation was allowed. However, it did allow evidence of Richard's alcohol abuse to be used for the discussion of the Aycocks' relationship with regard to compensatory damages. But even in this context, the testimony was limited to discussing the effects of Richard's alcohol use on their marriage in the most general terms.

The diagnosis and cause of death were contentious issues at trial. Thelma produced an expert who interpreted and confirmed the hospital's diagnosis of lung cancer that had metastasized to Richard's brain. However, Reynolds cited additional documents from Richard's final hospitalization indicating that his illness could have been the result of multiple causes, including lung cancer, melanoma, or "severe pneumonia." Reynolds used the lack of the pulmonary biopsy, resulting from the family's refusal of further treatment, to attack the certainty of the

6

hospital's diagnosis. The defense also produced Dr. Peterson, who, as stated above, was willing to testify that more data was needed to know if Richard had cancer, whether that cancer was the cause of his death, and that the origin of the cancer could not be determined due to multiple risk factors.

The jury returned a verdict for Thelma. It found that lung cancer caused by cigarette smoking was a legal cause of Richard's death, and that his addiction to smoking cigarettes containing nicotine and manufactured by Reynolds was also a legal cause of his death. It awarded $5.9 million in compensatory damages, and allocated 72.5% of the fault to Reynolds, and 27.5% to Richard. In accordance with the verdict, the court granted a judgment for the plaintiff in the amount of $4,277,500 against Reynolds.

After the jury returned its verdict, Reynolds moved for a new trial and remittitur of the compensatory damages, again alleging that the exclusion of evidence regarding Richard's alcohol use was improper. The court denied both motions, holding that it previously had "correctly determined that the proffered evidence was inadmissible because the prejudice substantially outweighed the probative value . . . ." Subsequently, Reynolds appealed and asks this court to reverse the judgment and order a new trial.

7

## STANDARD OF REVIEW

The evidentiary rulings of the district court are reviewed for a clear abuse of discretion. See, e.g., United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002). A district court abuses its discretion "if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010) (quoting Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1216-17 (11th Cir. 2009)). A court applies the wrong legal standard when it analyzes evidence under the wrong test or applies a test to evidence that the test should not apply to. See, e.g., Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1324 (11th Cir. 2008); Himmermann v. First Union Mortg. Corp., 305 F.3d 1257, 1264 (11th Cir. 2002). Even though the district court's evidentiary rulings are reviewed for a clear abuse of discretion, the appellate court is freer to perform a Rule 403 balancing test *ab initio* when, as here, the issue arises *in limine*. United States v. King, 713 F.2d 627, 631 (11th Cir. 1983).

## DISCUSSION

**1. The Court's Exclusion of Evidence Relating to Alcohol Abuse**

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in

8

determining the action. FED. R. EVID. 401. Even if the evidence is relevant, the court may exclude it if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. In excluding evidence for unfair prejudice, the evidence must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Id., Advisory Comm. Note (1972). Thus, in order for evidence to be excluded as unduly prejudicial under Rule 403, the undue prejudice it causes must substantially outweigh its probative value.

Because it allows a trial court to exclude evidence that is probative, Rule 403 is "an extraordinary remedy which should be used sparingly." King, 713 F.2d at 631. Accordingly, the balance should be struck in favor of admissibility. United States v. Lopez, 649 F.3d 1222, 1247 (11th Cir. 2011). Rule 403 should be used "only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." King, 713 F.2d at 631 (emphasis in original). In applying Rule 403, courts must "look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010). Because of this, a district court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed." United States v. Smith, 459 F.3d 1276, 1295 (11th Cir. 2006)

9

(quoting United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989) (quotation marks omitted)).

As evidence becomes more essential, its probative value becomes greater. King, 713 F.2d at 631. Rule 403's major function is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985) (quoting United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979)). Testimony merely intended to bolster a party's case is more easily excluded under Rule 403 than testimony that forms a critical part of that case. See United States v. Mills, 704 F.2d 1553, 1560 (11th Cir. 1983) (holding that evidence necessary to the government's rebuttal of a defendant's case could not be excluded under Rule 403, but could have been if it was introduced only to "bolster the prosecution's case.").

**A. Burden Shifting**

In ordinary cases under Florida law, a plaintiff bears the burden of proof on all four elements of negligence—duty of care, breach of that duty, causation, and damages. Clampitt v. D.J. Spencer Sales, 786 So. 2d 570, 573 (Fla. 2001). In negligence actions, the courts follow the more likely than not standard of causation, Gooding v. Univ. Hosp. Bldg., Inc., 445 So. 2d 1015, 1018 (Fla. 1984), meaning that the defendant's negligence "probably caused" the plaintiff's injury, Cox v. St. Joseph's Hosp., 71 So. 3d 795 (Fla. 2011).

10

However, courts treat evidence produced by plaintiffs to prove causation differently than they treat evidence produced by defendants to rebut causation. See, e.g., Haas v. Zaccaria, 659 So. 2d 1130, 1133 (Fla. Dist. Ct. App. 1995) (reversing a court decision to exclude defendant-doctor's alternative causation evidence). While the plaintiff bears the burden of proving that the defendant's negligence more likely than not caused the injury, that burden does not "logically compel[] the conclusion that the *defendant* [ ] is precluded from offering evidence of *possible* explanations other than his own . . . negligence." Id. (emphasis in original). As the court notes in Haas: "Probabilities are provoked by possibilities . . . . In a logical sense, the probabilities may be deduced only from an analysis of *all* the possibilities." Id. (emphasis added). The defendant's ability to present alternate causes is of paramount importance in allowing for an adequate defense. See, e.g., Guinn v. AstraZeneca Pharm. LP, 602 F.3d 1245, 1253 (11th Cir. 2010) (holding that a plaintiff's expert's differential diagnosis "must at least consider other factors that could have been the sole cause of the plaintiff's injury").

These principles are in keeping with both Florida law and decisions from other circuits. See, e.g., In re Paioli R.R. Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994) (holding an expert's testimony unreliable because he did not consider alternative causes). In Wilder v. Eberhart, the First Circuit found that the defendant "need not prove another cause" but "only has to convince the trier of fact that the

11

alleged negligence was not the legal cause of the injury." 977 F.2d 673, 676 (1st Cir. 1992) (holding that the district court's decision to grant plaintiff's motion *in limine* to exclude the defendant's evidence because it was stated in terms of "mere possibility" instead of "probability" shifted the burden of proof to the defendant). The defendant's alternative cause theories "need not be proved with certainty or more probably than not." Id. And to require them to be proved "would unduly tie a defendant's hands in rebutting a plaintiff's case where . . . plaintiff's expert testifies that no other cause could have caused plaintiff's injury." Id.

The decision in R.J. Reynolds Tobacco Co. v. Mack, 92 So. 3d 244 (Fla. Dist. Ct. App. 2012), is instructive. There, the plaintiff, whose father had died of laryngeal cancer and chronic obstructive pulmonary disease, was granted a motion *in limine* to exclude evidence that the deceased had been exposed to carcinogens while working as a mechanic and that the deceased had a family history of cancer. Id. at 246. The appeals court reversed, finding that "[b]y excluding Appellant's alternative causation evidence on the basis that its experts could not testify to a reasonable degree of medical probability, the trial court improperly shifted the burden of proof as to causation to Appellant." Id. at 247.

Here, just as in Wilder and Mack, the district court improperly shifted the burden of proof, forcing Reynolds to prove that Richard's death was caused by something other than smoking.  Under Florida law, the burden of proof was on

12

Thelma to show that Richard's addiction to cigarettes more likely than not caused his death.  Not only did the district court apply the wrong legal standard in requiring that the testimony offered by Reynolds regarding alternative causes be to a reasonable medical certainty, rather than the correct "more likely than not" standard, it also placed the burden of proof as to causation on the wrong party.

## B. Exclusion of Alcohol Evidence and Impact on Defendant's Case

In excluding all evidence of Richard's alcohol use except in considering damages, the district court greatly hindered Reynolds' defense. As stated above, as evidence becomes more essential, its probative value becomes greater. Here, Richard's alcohol use was an essential part of the defense's attempt to show that something other than his smoking could have caused his death. Thus, its probative value was high. Where, as here, the plaintiff bears the burden of proving causation and the defendant is unable to challenge fully the plaintiff's causative theory because of a court's evidentiary ruling, the decision to exclude that evidence should not stand.

Richard's alcohol abuse was especially relevant to several elements of the trial. First, his history of alcoholism was relevant to the cause of his death. Thelma's contention that Richard died of lung cancer was based primarily on the hospital's admission report and its interpretation by her expert, Dr. Burns. However, the lack of confirmation via biopsy left the cause of death open to some

13

debate. Reynolds had several experts who were prepared to testify that even though the precise cause of death could not be determined, alcohol could have contributed to whatever disease caused his death. The relevance of Richard's drinking to the cause of his death was even admitted by the plaintiff's expert, Dr. Burns. Since Thelma bore the burden of proving that cigarette smoking more likely than not caused Richard's death, and his alcohol use increased the likelihood that his death was caused by another disease, the evidence regarding his alcohol use was highly relevant and could have been used to rebut the plaintiff's case.

The evidence of Richard's alcohol use was also relevant to the determination of comparative fault. In assigning the percentage of fault to be allocated to each party, the jury heard evidence from each side; however, Reynolds' ability to present its evidence came with limitations. Whereas Thelma was unrestricted in her ability to direct the jury to evidence of Reynolds' alleged wrongdoing, Reynolds was handicapped in its response, having been denied the right to argue that Richard's excessive drinking also played a substantial role in his death. By excluding evidence of the alcohol use, Richard's heavy consumption of alcohol was in effect removed as a substantial contributing cause of his purported lung cancer. Moreover, the alcohol use was relevant because it contributed to the smoking itself. As Dr. Burns testified in Duke v. R.J. Reynolds Tobacco Co., No. 09-cv-10104 (M.D. Fla.), and as recognized by the Surgeon General, "alcohol

14

consumption has a negative effect on smoking cessation." When the jury is determining the comparative fault between the two parties to a tenth of a percentage, there is little doubt that allowing relevant evidence—namely, alcohol's impact on the development of lung cancer and its impact on smoking habits and duration—could alter that determination.

Finally, the evidence of Richard's alcohol use was relevant to damages. Because Thelma made no showing of economic damages, her argument for an award of damages rested squarely on the quality of the relationship between the Aycocks, and the suffering she endured from his loss. There is no doubt Richard's alcohol abuse affected his relationship with his wife and children.  His drinking habits affected his ability to work and provide for his family. During trial, the court allowed Reynolds to ask generally about the effects of Richard's alcohol use on his family.  But it prevented Reynolds from asking about specific instances or ways in which it affected them.  Thus, when Thelma denied that his alcohol abuse had affected their marriage, Reynolds was unable to rebut her testimony with her earlier deposition testimony to the contrary.  The defense's inability to mention evidence of Richard's alcohol abuse wounded its ability to present an accurate picture of the Aycocks' family life, which was a critical consideration in determining the damages awarded.

15

As Thelma notes in her brief, Reynolds was permitted to offer expert testimony on the possibility that Richard did not die as a result of a disease caused by smoking. Reynolds did in fact introduce evidence about other types of cancer, infection, and inflammation as possible causes of death. However, contrary to Thelma's assertion, the exclusion of the alcohol evidence was not harmless. The alcohol evidence made these other possible causes more likely, and in turn provided crucial support for the opinions of Reynolds' experts. Simply put, Reynolds was denied the opportunity to present to the jury crucial facts bearing on the likelihood of whether Richard died from lung cancer.

Here, the evidence relating to alcohol abuse formed an essential part of the defendant's case. Because probative value is greater as evidence becomes more essential, the evidence of Richard's alcohol abuse had high probative value.

## C. Prejudicial Effect of Including Alcohol Evidence

In order to satisfy Rule 403's balancing test, the evidence's prejudicial effect must be high enough to outweigh its probative value. Here, the potential is low that admitting evidence of Richard's alcohol abuse would be unfairly prejudicial. First, the consequences of alcohol abuse were directly relevant to several facets of this case, and so introducing them is not unfairly prejudicial. His drinking could have caused or made him more susceptible to the illness causing his death, could have influenced a jury's finding of comparative fault, and could have affected the

16

amount of damages they felt his widow was owed. Because his drinking problems were proven, and because the consequences of his drinking relate directly to the case, even if the evidence was prejudicial, it was not unfairly prejudicial.

However, even if true, the inclusion of evidence linking Richard's alcoholism to the medical problems that caused his death adds precisely no prejudice to the case at hand because the jury was already aware of his alcoholism. See, e.g., United States v. Jones, 266 F. App'x 886, 891-92 (11th Cir. 2011) ("At that point, there was no additional prejudice that could have resulted because the jury already knew what crimes Jones had been convicted of.  Therefore, the probative value of the evidence was not 'substantially outweighed by the danger of unfair prejudice.'" (quoting FED. R. EVID. 403)). Richard's alcohol abuse had already been exposed in the defense's cross-examination of his wife. As such, the members of the jury knew that Richard drank, Thelma did not approve, and that she would get angry when he would get "tipsy." They also knew, courtesy of Richard's medical report, that he had cirrhosis of the liver, a disease commonly caused by extended alcohol abuse. The court even admitted that the jury must have known of Richard's alcohol abuse. Given the pronounced references to Richard's alcohol use at trial, we think it difficult to conclude that any appreciable prejudice would have materialized from evidence linking Richard's alcohol use, of which the jury was already aware, to his death.

17

In sum, the district court erred in granting plaintiff's motion *in limine* to exclude evidence under Rule 403.  The evidence excluded was of high probative value and did not cause a high amount of unfair prejudice.  As such, under Rule 403's narrowly prescribed balancing test, the evidence should not have been excluded.  On this basis, we remand to the district court for a new trial.

**2. Defendant's Motion for Continuance to Allow for its Choice of Counsel**

We need not resolve this issue, as we have decided this case in Reynolds' favor on the first issue above.

**3. Defendant's Due Process Challenge**

Reynolds submits that it is a violation of federal due process to allow an Engle-progeny plaintiff to use the Engle findings to establish the conduct elements of his or her individual claims.  Recently, in Walker v. R.J. Reynolds Tobacco Co., 734 F.3d 1278, 1287 (11th Cir. 2013), cert. denied, 134 S. Ct. 2727 (Jun. 9, 2014) (No. 13-1193), this court engaged in a comprehensive analysis of the same issue, holding that the "decision of the Supreme Court of Florida to give preclusive effect to the approved findings from Phase I [of Engle] did not arbitrarily deprive R.J. Reynolds of property without due process of law."  Walker is, as Reynolds readily concedes, controlling authority which this court is bound to follow.

18

## CONCLUSION

For the foregoing reasons, the district court's decision is **REVERSED** and the case is **REMANDED** for a new trial.