[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10498
_____

D.C. Docket No. 1:16-cv-24267-CMA


JUAN L. PEREZ,
MARIA A. POSADA,

                                                            Plaintiffs-Appellants,

versus

CITY OF SWEETWATER,
RAFAEL DUARTE, et al.,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 3, 2019)

Before WILLIAM PRYOR and NEWSOM, Circuit Judges, and ROSENTHAL,[*]
Chief District Judge.

PER CURIAM:

_____

[*] Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District
of Texas, sitting by designation.

Careful district judges anxious to protect the trial record and avoid retrial may submit cases to the jury, even when the judge doubts that the evidence is sufficient to support the liability finding and damages the plaintiff seeks. If the jury returns a defense verdict, the judge usually needs only to enter judgment. But when, as here, the jury finds liability and imposes a large damages award, the district judge must decide whether to displace the verdict by granting judgment as a matter of law. The district judge took that step here, and the plaintiff appealed, requiring us to decide if the jury had any reasonable basis to return the verdict it did. We agree with the district court that this record did not present sufficient evidence to support the verdict, and we affirm.

## I.    Background

A jury found that the City of Sweetwater, Florida was liable under 42 U.S.C. § 1983 for injuries that Juan L. Perez suffered when a car fleeing police pursuit hit Perez's vehicle at a high speed. The jury awarded Perez $1,000,000 in compensatory damages. After trial, the City renewed its motion for judgment as a matter of law, which the district court granted, finding that no reasonable jury could have found the City liable under § 1983 based on the trial evidence. Perez appeals the district court's decision during trial to exclude certain evidence and its decision after trial to grant judgment for the City as a matter of law.

Early the morning of January 2, 2012, Juan Perez left his home in Miami, Florida to drive to work. As he was driving east on 8th Street, he noticed four police cars stopped behind "one dark car." Officer Richard Brioso, a City police officer, had stopped the "dark car," a Mercedes Benz, for reckless driving. Officer Brioso testified at trial that the Mercedes had been traveling at a high speed and appeared to be racing another car. At trial, the driver testified that he was not racing another car, but he did not recall how fast he was driving. The passenger had been asleep and could not dispute Officer Brioso's testimony.

Three nearby City police officers—Officers Rafael Duarte, Armando Gonzalez, and Domingo Benito—responded to Officer Brioso's dispatch report of the stop. The Mercedes driver, Felipe A. Torrealba, gave the officers a Texas identification card, telling them that he did not have a Florida driver's license. The officers did a routine run of Torrealba's name through identification databases and found a Florida driver's license with a picture matching Torrealba's appearance. The picture showed a large tattoo on Torrealba's neck. When the officers asked Torrealba about his tattoo, Torrealba ran toward the Mercedes's driver-side door. The police officers ordered him to stop, but he kept going. The officers gave chase.

Officer Duarte was closest to Torrealba, but Torrealba got to the Mercedes first. The officers testified at trial that at that point, they saw Torrealba reach into his waistband, pull out a handgun, and aim it at Officer Duarte. Officer Duarte yelled

3

"Oh, shit[,] gun," and leaned "back towards the driver['s] rear door" for cover, holding onto the "middle pillar of the vehicle." The Mercedes started moving, dragging Officer Duarte. Officers Gonzalez and Brioso fired 23 rounds at Torrealba, but he raced away. Officer Benito testified that he got into his patrol car to give chase but "had no chance" because the Mercedes was already "two blocks ahead." At trial, Torrealba testified that he did not have a gun on that day, disputing the officers' testimony.

Perez was still driving on 8th Street. He looked into his rearview mirror and saw "light coming like a lightning." He could do nothing more than "say, [s]orry, Maria," before the Mercedes hit his truck at high speed. Perez recalled nothing after seeing the light and feeling the impact. He regained consciousness upside down in his crumpled truck, smelling leaking gasoline. The Fire Rescue Squad had to free him from the truck. Perez was hospitalized for 14 days.

Officer Benito was the first to arrive at the collision scene. He saw the truck but did not check on the occupants, because his "main concern was [that Torrealba was] armed with a handgun and" on the loose. The Mercedes had crashed into a palm tree "30, 40 yards away" from Perez's truck. A bystander told Officer Benito that a man had jumped out of the Mercedes and into a nearby canal. Officer Benito radioed dispatch to set up a perimeter blockade in the area.

The City police officers did not find Torrealba on January 2, 2012, and they did not find a firearm or evidence that Torrealba had fired a gun from the Mercedes, the canal, or the crash area. Torrealba was finally arrested in February 2013. Torrealba pleaded guilty to resisting arrest with violence and to resisting arrest without violence for his actions on January 2, 2012. He received a three-year sentence.

Perez and his wife, Maria A. Posada,[1] sued the City and Officers Duarte, Brioso, and Gonzalez in state court, asserting claims under 42 U.S.C. § 1983 and for negligence. Perez alleged that his injuries were caused by the officers' unconstitutional use of deadly force. He alleged that the City's custom relating to conducting vehicle stops to enforce a towing ordinance to obtain money or property for the City, and the City's custom relating to, and training in, using deadly force and engaging in high-speed chases, violated his Fourteenth Amendment substantive due-process rights. The City and the officers removed. The district court dismissed the claims against Officer Duarte, with prejudice, and denied Officers Brioso's and Gonzalez's motions for summary judgment. Officers Brioso and Gonzalez filed an interlocutory appeal, and Perez's claims against them were not tried with his claims against the City.

---

[1]    Perez and Posada are referred to collectively as Perez.

5

Perez voluntarily dismissed his negligence claim against the City during trial. The City moved for judgment as a matter of law on the § 1983 claims after Perez rested his case-in-chief, and renewed the motion at the close of the evidence. Perez asserted two bases for liability against the City: (1) that the City had an unconstitutional policy or custom relating to the police use of deadly force or conducting high-speed pursuits, causing a violation of Perez's Fourteenth Amendment due-process rights; and (2) that the City was deliberately indifferent to the need for different or more officer training or supervision as to deadly force or high-speed pursuits. The district court instructed the jury on the elements under each theory. The jury found that the City was deliberately indifferent to an unconstitutional policy or custom as to using deadly force, but not as to conducting high-speed pursuits, and was deliberately indifferent to the need for officer training on both using deadly force and conducting high-speed pursuits. The jury awarded Perez $1,000,000 in compensatory damages, and the court entered final judgment in that amount.

The City filed a timely renewed motion for judgment as a matter of law. *See* FED. R. CIV. P. 50(b). The court granted the City's motion, finding that the evidence did not allow a reasonable jury to conclude that the City had a policy or custom of "conscience-shocking use of lethal force" or that the officers' training was deficient as to lethal force or the conducting of high-speed pursuits following traffic stops.

6

The district court vacated the final judgment based on the verdict and entered final judgment for the City.

In this appeal, Perez challenges the district court's decision to exclude from the trial evidence parts of affidavits submitted in 2017 by two Miami-Dade detectives to get arrest warrants against two former City police officers for misconduct they allegedly committed on duty.  Perez also challenges the district court's decision to grant judgment as a matter of law, contending that there was enough trial evidence for a reasonable jury to find that the City police department had a custom of using unlawful means to enforce a towing ordinance, in order to collect the fines and personal property from the vehicles, and that this custom was the moving force behind the constitutional violation and Perez's injuries.  Perez also argues that there was enough evidence for a reasonable jury to find that the City was deliberately indifferent to the need for different or additional officer training on using deadly force and engaging in high-speed vehicle pursuits.  Although Perez's innocent-bystander status evokes sympathy, the evidence simply does not support the jury's verdict.

## II.    The Standards of Review

### A.    Evidentiary Rulings

"The evidentiary rulings of the district court are reviewed for a clear abuse of discretion."  *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir.

2014). "[T]he deference that is the hallmark of abuse-of-discretion review[] requires that we not reverse an evidentiary ruling of a district court unless the ruling is manifestly erroneous." *United States v. Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018) (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004)). "A district court abuses its discretion 'if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Aycock*, 769 F.3d at 1068 (quoting *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010)).

## B.    Judgment as a Matter of Law

When "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may either "resolve the issue against the party" or "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 50(a)(1). "Judgment as a matter of law for a defendant is appropriate[] 'when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim.'" *Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1121 (11th Cir. 2016) (quoting *Collado v. United Parcel Serv., Co.*, 419 F.3d

8

1143, 1149 (11th Cir. 2005)). A district court may grant judgment as a matter of law only "where reasonable jurors could not arrive at a contrary verdict." *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1344–45 (11th Cir. 2000) (alteration and quotation omitted). "In considering a Rule 50(b) motion after the jury verdict, 'only the sufficiency of the evidence matters. The jury's findings are irrelevant.'" *Cadle*, 838 F.3d at 1121 (quoting *Connelly v. Metro Atlanta Rapid Transit Auth.*, 764 F.3d 1358, 1363 (11th Cir. 2014)).

An appellate court reviews a "district court's ruling on a motion for judgment as a matter of law *de novo*, considering the evidence and the reasonable inferences drawn from it in the light most favorable to the nonmoving party." *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017).

## III.    Discussion

"As a general rule, to prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.'" *Nix v. Franklin Cty. Sch. Dist.*, 311 F.3d 1373, 1375 (11th Cir. 2002) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). "[O]nly a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Lewis*, 523 U.S. at 836. An official's "actions 'intended to injure in some way unjustifiable by any government interest' are those 'most likely to rise to the conscience-shocking

9

level.'" *Nix*, 311 F.3d at 1376 (quoting *Lewis*, 523 U.S. at 849); *see also Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009); *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

"[T]he bar to establish municipal liability is very high." *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997); *City of Canton v. Harris*, 489 U.S. 378, 385–86 (1989). The plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cty.*, 520 U.S. at 404 (emphasis in original). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. A custom requires the plaintiff to identify evidence showing "[a] pattern of similar constitutional violations." *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Connick*, 563 U.S. at 62).

A municipality's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. A municipality's

10

"failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (alteration omitted) (quoting *Canton*, 489 U.S. at 388). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bryan Cty.*, 520 U.S. at 409).

Because this appeal focuses on the sufficiency of the evidence, we first consider whether the district court abused its discretion in excluding certain trial evidence. Finding no error, we then analyze whether the admitted evidence was enough for a reasonable jury to find that the City had an unconstitutional custom relating to using deadly force or engaging in high-speed vehicle pursuits, or was deliberately indifferent to the need for more or different training on using deadly force and engaging in high-speed vehicle pursuits. Again, we find no error.

### A.    The Evidentiary Ruling

Perez sought to admit arrest-warrant affidavits executed by two Miami-Dade detectives in 2017 to obtain warrants against two former City police officers for

misconduct allegedly committed while on duty in 2012.  The affidavits detailed eight incidents in which the former officers allegedly unlawfully entered houses, took property, towed vehicles, beat and tasered suspects while interrogating them, and at least once waterboarded a suspect.  None of the eight incidents involved officers using deadly force or conducting high-speed vehicle chases.  One incident occurred in September 2010, before the chase and crash here, but the other seven were after, occurring between May and September 2012.

The district court excluded the affidavit sections discussing the post-event incidents, but admitted the introductory paragraphs and the description of the September 2010 incident.  Perez argues that the district court erred in excluding the affidavit sections on the post-event incidents, because they would have "proven several other instances of the same administrator turning a blind eye and actually encouraging constitutional violations."  Appellant's Reply Br. at 20 (emphasis omitted).

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *Aycock*, 769 F.3d at 1068 (citing FED. R. EVID. 401).  "Even if the evidence is relevant, the court may exclude it if its probative value is substantially outweighed by a danger of 'unfair prejudice, confusing the issues,

12

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.* (quoting FED. R. EVID. 403).

The events described in the excluded sections of the affidavits are evidence of factual situations that have no similarity to this case. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). The events described in the excluded sections did not involve deadly force or high-speed vehicle pursuits. The only similarities between the excluded incidents and the events here are that vehicles were involved in both and some of the excluded incidents involved traffic stops. Because the excluded sections of the affidavits discussed events that were so dissimilar, they were of little to no relevance, and whatever relevance was present was clearly outweighed by the risks of unfairly prejudicing the City and confusing the jury. The district court was well within its discretion in excluding this evidence.

## B.    The City's Custom

Perez had to prove by a preponderance of the evidence that the City "had a custom or policy that constituted deliberate indifference" to his Fourteenth Amendment right to be free from the arbitrary, conscience-shocking use of deadly force. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Meeting this burden required evidence of a "pattern of similar constitutional violations" supporting a reasonable inference that the City had "such a longstanding and widespread practice [relating to conscience-shocking deadly force] that it is deemed

13

authorized by the policymaking official because they must have known about it but failed to stop it." *Craig*, 643 F.3d at 1310 (alteration and quotation omitted).

There is no evidence of a written policy encouraging or authorizing police officers to use conscience-shocking deadly force, and Perez presented no evidence of similar prior incidents. He cites a prior high-speed pursuit by Officer Benito, but this incident fails the similarity test; the pursuit there was authorized, caused no injuries, and resulted in robbery suspects' immediate arrest.

Perez's theory of liability was instead that a "culture of corruption" existed in the City's police department around the enforcement of a towing ordinance and alleged wrongdoing by officers in the City police department's General Investigation Unit. The first problem is that there is no evidence that the stop, shooting, or chase here had anything to do with police intending to seize Torrealba's vehicle and have it towed. The second problem is that the prior incidents Perez cites have nothing to do with what the evidence here showed were the circumstances surrounding the stop, the use of force, and the pursuit.

Perez contends that the trial evidence supported a reasonable inference that "the decision makers in the City had notice that their officers were using unnecessary force and unlawful means to make use of the towing ordinance for the benefit of the City and City officials." Appellant's Amended Br. at 26–30. Perez argues that "[i]t is entirely reasonable for the jurors to conclude that if the City would tolerate illegal

14

stops and investigations, unnecessary force against citizens[,] and unlawful taking of their property[,] that the City would tolerate the level of force in this case." Appellant's Reply Br. at 13.

Perez's arguments fail. He does not identify trial evidence of prior similar incidents involving police officers confronted with a suspect they believed was armed, who disregarded their orders, pointed a gun at an officer, and fled at high speed. The district court correctly found that the evidence was not sufficient to allow a reasonable jury to conclude that the City had a "longstanding and widespread practice" of encouraging the conscience-shocking use of deadly force in similar circumstances. *Craig*, 643 F.3d at 1310 (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

Nor does the evidence support "a direct causal link" between the alleged custom of overly aggressive enforcement of the City towing ordinance and the crash that caused Perez's injuries. *Cuesta v. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 967 (11th Cir. 2002) (quotation omitted); *see Bryan Cty.*, 520 U.S. at 410 ("[A] court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."). No evidence showed that the prospect of a towing fee played any role in Officer Brioso stopping the Mercedes when he saw it speeding

15

through the public streets in the predawn hours after New Year's Day.[2]  No evidence showed that the towing ordinance played any role in the questioning of Torrealba that followed and led to the discovery that he had provided a false Texas identification and lied about not having a Florida license.  No evidence showed that towing had anything to do with the subsequent use of deadly force in response to Torrealba's undisputed disregard for police orders and the evidence that he drew a handgun, pointed it at a police officer, and drove away at high speed.  No evidence showed that the "known or obvious consequences" of enforcing the towing ordinance or chasing a fleeing suspect, especially one believed to be armed, would be a conscience-shocking use of deadly force.  *Am. Fed. of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011) (quotation omitted).

Perez asserts that the City ratified the officers' allegedly unconstitutional behavior by having "a 'chaotic' department"; "failing to conduct any internal investigation after the incident"; failing to require Officers Gonzalez and Brioso to make a written report after they fired their weapons at Torrealba; and sending "their own crime scene units to sanitiz[e] the crime scene."  Appellant's Amended Br. at 31, 34.  But Perez identifies no evidence that the City's policymakers reviewed the officers' actions "before they became final" or approved their "decision and the basis

---

[2] While Torrealba denied racing another car, neither he nor his passenger could recall whether they were speeding.

16

for it." *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (alteration and quotation omitted). A reasonable jury could not have found that the City ratified the officers' actions.

Having submitted the case to the jury despite the scant evidence, the district court did what no trial judge relishes doing—granting judgment notwithstanding the verdict because the evidence was insufficient to make it reasonable, as a matter of law. The district court did not err in entering judgment as a matter of law for the City as to Perez's claim that the City had an unconstitutional custom that was the moving force behind the constitutional violations and his injuries.

## C.    The City's Failure to Train

Perez's failure-to-train theory fares no better. Perez had to prove by a preponderance of the evidence that the City was deliberately indifferent to the need for different or more officer training or supervision on using deadly force or engaging in high-speed pursuits. The trial evidence made it unreasonable for the jury to find "[a] pattern of similar constitutional violations by untrained employees," as needed to demonstrate deliberate indifference to the risk of constitutional violations that was a moving force behind Perez's injuries. *Connick*, 563 U.S. at 62; *Mercado*, 407 F.3d at 1162.

Perez pieced together arguments connected only by the fact that they generally involved police encounters with vehicles. He argued, for example, that "during the

17

relevant time, [the] officers were unrestricted when it came to making stops outside their jurisdiction"; the "officers were often illegally towing cars without authority"; the officers involved in this case did not receive, and were not required to know, the City's Standard Operating Procedures; and "the shooting officers were not properly trained on the City's policy against shooting into moving vehicles."  Appellant's Amended Br. at 37–38, 40–42.  He generally argued that the City was "deficient in its hiring practices" and that the officers here were "inexperienced and untrained." *Id.* at 41–42.

But the arguments and evidence Perez presented were not of circumstances "substantially similar" to the constitutional violation that Perez has asserted: a conscience-shocking use of force and the high-speed pursuit of a fleeing suspect who had lied in answering the officers' questions and disregarded direct orders, particularly given the testimony that the officers believed him to be armed. *Mercado*, 407 F.3d at 1162.  Perez's evidence could not have put the City on actual or constructive notice that its police officers required additional training or supervision in the "particular area[s]" of deadly force or high-speed pursuits to avoid the constitutional violations he alleged.  *Gold v. City of Miami*, 151 F.3d 1346, 1351–52 (11th Cir. 1998); *see, e.g.*, *Connick*, 563 U.S. at 63 ("Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.").

18

Perez argues that the officers' "need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [C]ity can reasonably be said to have been deliberately indifferent to the need." Appellant's Amended Br. at 45. Perez points out that Officer Gonzalez, a new officer who was "never handed a copy of the City's standard operating procedures," was unsure whether "the standard operating procedures were reviewed with him." *Id.* at 46–47. Officer Gonzalez was at some point "suspended or reprimanded for falsifying a police report or at the very least not following police procedures." *Id.* None of this shows that if Officer Gonzalez had had more experience or had read the procedures, that would have made any difference at all, given the evidence as to what happened at the scene leading up to the pursuit and crash. Perez's allegations about Officer Gonzalez's training are insufficient for a reasonable jury to find the City liable for failure to train or supervise. *See Canton*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city . . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training.").

Evidence on the City's training program came from Officer Brioso's testimony that all City police officers had to take "training classes" on deadly force "either once a year or every six months" to "stay certified" with the Florida

19

Department of Law Enforcement.  This testimony does not support finding that the City's training regimen as to deadly force or high-speed pursuits was "so obvious[ly]" inadequate and "so likely to result in the violation of constitutional rights" that the City could "reasonably be said to have been deliberately indifferent." *Canton*, 489 U.S. at 390.

The district court did not err in finding that no reasonable jury could conclude that the City was deliberately indifferent to a need for training or supervision as to deadly force or high-speed pursuits.  The district court did not err in granting judgment as a matter of law on the failure to train claim.

## IV.    Conclusion

The district court's judgment for the City as a matter of law is **AFFIRMED**.